**UNITED STATES of America**

v.

**Tyrone PARKER, Appellant.**

**No. 23797.**

United States Court of Appeals,
District of Columbia Circuit.

Feb. 9, 1971.

Petition for Rehearing Denied
April 26, 1971.

Mr. Howard J. McGrath, Washington, D.C. (appointed by this Court) was on the brief for appellant.

Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief for appellee.

Before LEVENTHAL and WILKEY, Circuit Judges, and SMITH,* Chief Judge, U. S. District Court for the District of Montana.

PER CURIAM:

Appellant and three co-defendants were indicted for bank robbery and ancillary offenses in violation of 18 U.S.C. § 2113(a) and 22 D.C.Code §§ 2901, 3202, and 502. Appellant's three co-defendants each pleaded guilty to armed robbery, and appellant went to trial alone. After all the evidence was in, ap-

pellant moved for a judgment of acquittal. The motion was denied, and the jury found appellant guilty of entering a bank with intent to commit robbery therein, bank robbery, armed robbery, and assault with a dangerous weapon. The court imposed concurrent sentences on appellant running from fifteen to forty-five years. Appellant claims that it was error to deny his motion for acquittal and that a reference by the prosecutor to his prior confinement deprived him of a fair trial.

## I

■ The prosecutive theory of the Government's case was that appellant, although not one of the three men who entered and robbed the bank, "was an aider and abettor" and that he "played * * * the role of a conniver" and drove the getaway car. The evidence against appellant was mostly circumstantial, but we cannot say that the proof was so insufficient that acquittal should have been directed.

The evidence must be viewed in the light most favorable to the government, both as to its truth and as to all legitimate inferences to be drawn therefrom, in determining whether reasonable jurymen must necessarily have a reasonable doubt or might not have such a doubt. Crawford v. United States, 126 U.S. App.D.C. 156, 158, 375 F.2d 332, 334 (1967); Curley v. United States, 81 U. S.App.D.C. 389, 160 F.2d 229, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L. Ed. 1850 (1947). See also Johnson v. United States, 138 U.S.App.D.C. 174, 426 F.2d 651 (1970) (en banc).

Appellant relies upon Bailey v. United States, 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969) where we held that "[a] sine qua non of aiding and abetting * * * is guilty participation by the accused." There we held the evidence against the appellant—presence at the scene of the robbery; limited, open prior association with the actual perpetrator; and subsequent flight when a

---

* Sitting by designation pursuant to 28 U.S.C. § 292(c).

witness shouted, "They are robbing him!"—to be insufficient to show aiding and abetting. *See* Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S. Ct. 766, 93 L.Ed. 919 (1949). We characterized the evidence in *Bailey* as "pregnant with the probability that appellant was an innocent bystander." 135 U.S.App.D.C. at 100, 416 F.2d at 1115.

In this case the evidence of guilty participation is stronger. Appellant was seen entering the getaway car some ten minutes before the robbery, accompanied by one of the confessed active perpetrators. He was carrying a gun. Someone drove the getaway car, and appellant was seen with two of the active robbers in New York one day later. This is sufficient evidence to go to the jury under the *Curley-Crawford* standards.

## II

█ Appellant also claims he should have been granted a mistrial when the prosecutor asked him, on cross-examination, if it were not a fact that he had been confined in John Howard Pavilion, a part of Saint Elizabeths Hospital, in the months of September, October, November and December of 1968. Counsel say this intimated either that defendant was awaiting trial; or confined in Saint Elizabeths; or was confined after a criminal trial,—and constitutes an impermissible impeachment of defendant in a trial involving conflict of testimony.

If the question stood without context, it would raise a serious question of prejudicial error. Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509 (1966). The possibility of prejudice is heightened by the fact that John Howard is a maximum security location in the hospital. We are not clear whether the difficulty is avoided by the explanation submitted by the Government for the prosecutor's asking the question.[1] However, the question related to a period subsequent to appellant's arrest for the instant bank robbery, as brought out in his own testimony. And appellant had already testified that the reason he was unemployed on August 15 was that he had a prior arrest for robbery. The defense counsel declined the judge's proposed explanatory instruction. There is no sound claim of substantial prejudice.

█ While we affirm appellant's robbery conviction under Section 2113(a), we note that his concurrent sentence for entry with intent to rob cannot be sustained under the rule of Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), that entry merges with the crime of robbery when the latter is consummated, under the Federal Bank Robbery Act. Accordingly, we follow the procedure used in Bryant v. United States, 135 U.S.App.D.C. 138, 141, 417 F.2d 555, 558 (1969); where we set aside an "entering" conviction and said, " * * * since we cannot say that the sentences for the affirmed convictions of robbery under Section 2113(a) were not influenced by the impermissible [entry] convictions under that section, we not only set aside the latter convictions as inconsistent with *Prince* but remand for resentencing on the robbery convictions under Section 2113(a) which we affirm."

It is so ordered.

1. There was alibi testimony that defendant had, on the day of the robbery, been visiting his brother in John Howard. But he had not signed the visitors' register. Defendant explained he knew Mr. Danridge, in charge of the visitors' lobby, and further testified that he knew Mr. Danridge *only* because of his prior visits to his brother. The prosecutor says he meant to test that assertion. But the materiality of defendant's subsequent confinement in September-December, 1968, was slight, if any, and might not have justified the question in view of the prejudice involved.